CLEVELAND NEIGHBORHOOD HEALTH SERVICES,
INC., Appellant and Cross–Appellee,

v.

ST. CLAIR BUILDERS, INC., Appellee and Cross–Appellant.

[Cite as *Cleveland Neighborhood Health Serv., Inc. v. St. Clair Builders, Inc.* (1989), 64 Ohio App.3d 639.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55734.

Decided Oct. 2, 1989.

**640**

*Darrell Fields, Eliot Green* and *Stacey Polk; Jones, Day, Reavis & Pogue* and *Matthew Fitzsimmons,* for appellant and cross-appellee.

*Gus Frangos,* for appellee and cross-appellant.

MARTIN, Judge.

Appellant, Cleveland Neighborhood Health Services, Inc., appeals the judgment of the trial court wherein it was determined that appellant owed appellee, St. Clair Builders, Inc., $147,881.15 on a construction contract. This judgment amount was later reduced to $107,881.15 due to a clerical error that was brought to the court's attention via appellant's Civ.R. 60(A) motion.

The construction contract at issue arose in 1984 when appellant began soliciting bids to have alterations and additions made on a building located on Superior Avenue in Cleveland, Ohio ("Superior Project"). Appellee was awarded the contract and January 2, 1985 was set as the start-up date for the project.

Due to difficulty in acquiring the necessary permits for the job and the inclement weather conditions, the project was not begun until the first week in March. The record indicates that all parties were aware of the delays and raised no objections to the delayed start. Also, appellant agreed to extend the completion date from June 1, 1985 to at least July 1, 1985.

In addition to the Superior Project, appellant also hired appellee to work on three separate construction jobs. The sites for these jobs were in the Collinwood area, on Miles Avenue, and on East 82nd Street. Appellee was

authorized to begin work at these areas in April, May and June 1985, respectively.

Appellant argues that during the time when the Superior Project was under way, several problems arose. Many of the difficulties involved seemed to be a lack of conformity in the specifications required for the job. Appellant hired architect Neil Guda to prepare the plans for the renovations at the Superior site. However, several changes were made before final copies were given to appellee. The record also reveals that appellant required appellee to alter the building plans along the way, which created further delays and confusion over the actual construction work needed.

During the time when appellee was working on the Superior Project, it was paid according to the American Institute of Architects ("AIA") draw forms. Appellee would list the percentage of work completed, and then request payment from appellant for that amount. Appellee's first request was for $59,939.55, which reflected work completed from January 7, 1985 through April 26, 1985. This amount was paid. Appellee's second request was for $73,203.30 for work performed from April 26, 1985 through June 17, 1985, which sum appellant also paid.

In August 1985, appellee submitted its third draw request to appellant for work performed from June 17, 1985 through August 2, 1985. This request was denied, and appellee was subsequently fired by appellant by September 4, 1985.

On November 19, 1985, appellant filed suit against appellee alleging breach of contract, breach of warranty, and a claim for out-of-pocket expenses and lost revenue. Appellee filed an answer and counterclaim asserting that appellant had breached the Superior Project contract and owed money on the Collinwood, Miles Avenue, and East 82nd projects as well.

On January 24, 1988, a bench trial commenced whereby the parties submitted all evidence relative to the disputes at issue. Following the trial, counsel for appellee submitted a letter to the court setting out the figures presented at trial which reflected the amounts owed to appellee for work completed on the various construction projects. This letter also pointed out to the court that a clerical error had been made in prior calculations. The corrected error was subsequently adopted by the court's judgment entry.

In February 1988, the parties submitted proposed findings of fact and conclusions of law to the trial court. The judgment subsequently rendered by the trial court was in favor of appellee, and appellant was found to be liable for the outstanding amounts owed on the four projects.

Appellant moved the trial court for findings of fact and conclusions of law pursuant to Civ.R. 52. The trial court complied with this request.

From that judgment, appellant filed a notice of appeal to this court. Appellee filed a cross-appeal. Thereafter, appellant filed a Civ.R. 60(A) motion to have the case remanded to the trial court for correction of the clerical error in the judgment amount. This motion was granted.

On remand, appellee moved for reconsideration of its earlier request for prejudgment interest. The trial court granted appellee's motion.

On review of the decision rendered by the trial court, this court is presented with six assignments of error.

"I. The trial court erred when it accepted and adopted defense counsel's off-the-record, ex-parte letter.

"II. The trial court clearly erred in calculating the damages awarded to St. Clair.

"III. The trial court erred in determining that St. Clair completed 100% of the Superior contract.

"IV. The trial court erred in finding that St. Clair had not breached the Superior contract.

"V. The trial court erred by disallowing the consequential damages incurred by Health Services regarding the out-of-pocket costs of doctors and lost revenues.

"VI. The trial court erred in awarding to St. Clair prejudgment interest."

██ Appellant's first assignment of error claims that prejudice resulted when the trial court accepted an ex-parte letter from appellee's counsel. This contention has no merit.

The letter at issue contained figures which listed the amount of money owed to appellee for work done under the construction agreement with appellant. In issuing findings of fact and conclusions of law, the trial court adopted these figures as valid in terms of the total amount owed. These figures were incorporated into the findings issued by the court.

It was later discovered that the judgment figure entered by the trial court was erroneous. Appellee had mistakenly added $40,000 to the documentation of outstanding bills. This $40,000 amount had already been paid to appellee as an advance on work performed under contract.

Even though the trial court was in error for adopting the incorrect figures proposed by appellee, this error was subsequently corrected. While we accept the fact that the trial court has the duty to examine such documentation thoroughly to ensure that it is accurate in law and fact, no prejudice resulted

in this case.   Cf. *Paxton v. McGranahan* (Oct. 31, 1985), Cuyahoga App. No. 49645, unreported, 1985 WL 6444.

In appellant's Civ.R. 60(A) motion, this error was brought to the attention of the trial court and corrected.   Thus, any error that may have occurred did not prejudice appellant.

Appellant's first assignment of error is without merit.

■   Appellant's second, third and fourth assignments of error will be discussed jointly as they all challenge the trial court's decision as being against the weight of the evidence, and allege that the findings of fact and conclusions of law issued by the trial court were erroneous.

The trial court found that since appellee had "substantially completed" the contract for performance on the Superior Project, it was entitled to the remainder of the contract price agreed upon.   The entire contract price amounted to $218,000.   The evidence adduced at trial established that when appellant dismissed appellee from the job, all but $2,000 worth of work remained to be done.   It was also found that $7,000 worth of work was needed to correct certain portions that were not properly performed.   The court found that this amount constituted less than five percent of the entire contract price, which established ninety-five percent completion.

In *Kichler's, Inc. v. Persinger* (1970), 24 Ohio App.2d 124, 126, 53 O.O. 337, 338, 265 N.E.2d 319, 321, this court held that:

"Substantial performance of a contract is interpreted to mean that mere nominal, trifling, or technical departures are not sufficient to break a contract, and that slight departures, omissions and inadvertencies should be disregarded.   *Ashley v. Henahan* (1897), 56 Ohio St. 559 [47 N.E. 573]."

■   Where the party obligated to perform under the contract makes an honest effort to do so, and there is no willful omission on its part, substantial performance is all that is required to entitle the party to payment under the contract.   *Ashley, supra,* at 569, 47 N.E. at 575–576.

■   Appellant argues that appellee failed to carry out the terms of the contract in a timely and workmanlike fashion.   While we accept the fact that a July 1, 1985 deadline was set for completion, appellant acquiesced in any delay, or effectively waived its right to complain about it.   See *Frantz v. Van Gunten* (1987), 36 Ohio App.3d 96, 521 N.E.2d 506.   The record demonstrates that appellant was aware that work on the Superior Project was delayed while the appropriate building permits were acquired.   The weather conditions also caused substantial delay.

Additionally, changes were made on the original designs for interior construction at appellant's behest. These changes required additional work by appellee which extended the completion time. None of the requests for changes was reduced to formal writings. However, the evidence demonstrated that appellant had full knowledge of the problems experienced throughout the construction work. *Ashley, supra.*

Appellee was never notified formally of dissatisfaction with its work. Appellant worked with appellee on the project and only displayed annoyance when the third request for payment was made by appellee. The conduct of appellant amounted to clear and convincing evidence of a waiver of the written contract. *Frantz, supra,* 36 Ohio App.3d at 99, 521 N.E.2d at 509–510.

In terms of appellant's argument that appellee failed to comply with the workmanlike standard, there was no evidence to substantiate that appellant was dissatisfied with the quality of work during the time when appellee was performing services. The contract called for such dissatisfaction to be reduced to writing. No written notice was ever given to appellee.

■ Appellant eventually provided appellee with a "punch list" which documented areas of dissatisfaction. However, this was given to appellee after substantial completion of the Superior Project, and after it had been terminated by appellant. Thus, appellant failed to comply with the requisite task of notification to appellee.

■ Appellant also alleges error in the trial court's determination that it was obligated to pay appellee for time and material on the Collinwood, Miles Avenue, and East 82nd Street renovation projects at the same time that the Superior Project was under way.

Appellant asserts, however, that since there was no written contractual agreement to cover the work done on these projects or a fixed price for the completed work, appellee should only have been paid for time and material utilized. Appellant argues that the trial court erred by awarding damages based on a fixed price for each job.

The record does reflect that the damage award was based upon percentages of the total cost of renovations that were to be done on the three construction sites. However, the evidence proffered by appellee established that the percentage damage award was arrived at by calculating time and material spent on the work performed prior to termination.

Appellee presented documentation that demonstrated it performed thirty percent of the total $65,740 for work on one portion of the East 82nd job, which amounted to $19,722. The trial court subtracted $10,246.50 already

paid to appellee and found the damage amount to be $9,474 for work completed.

Appellant also declined payment to appellee for the second portion of the East 82nd job. Appellee established that it had spent $9,370 for work on the pharmacy located in that structure. That amount was included in the damage award.

On the Collinwood job, appellant testified that the estimated cost for renovation would be $375,000. To confirm this figure, the architect hired by appellant signed a draw sheet which reflected that amount. From that figure, appellee was paid $95,900 prior to its termination.

At trial, the evidence established that appellee had spent $149,994 for time and material at that job. Thus, the damage award on the Collinwood job was $54,094.

This method was also applied to the Miles Avenue job where it was determined that appellee had completed $31,500 worth of work out of a total of $450,000. That amount was also awarded to appellee.

In determining whether the trial court erred in its damage award we must note that the course of conduct between the parties was thoroughly taken into consideration. The record reflects that the parties' payment agreement throughout the Superior Project, and the three other construction jobs, was based upon points of completion. In light of the conduct between the parties, the trial court did not err in awarding damages which correlated with the completed work of appellee. See *Natl. City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland* (App.1947), 48 Ohio Law Abs. 325, 74 N.E.2d 273, paragraph four of the syllabus; *Breithaupt v. McGinnis* (1947), 79 Ohio App. 305, 35 O.O. 63, 73 N.E.2d 230.

The findings of fact and conclusions of law issued by the trial court were amply supported by the record. The evidence established that appellee acted in accordance with the contract terms set up by appellant.

A reviewing court will not reverse a judgment which is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Further, it is within the province of the trier of fact to assess the credibility of the witnesses. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

Accordingly, appellant's second, third and fourth assignments of error are overruled.

■ Appellant's fifth assignment of error alleges that the trial court erred in not awarding consequential damages to appellant. This argument has no merit.

In the trial court, appellant sought damages for lost revenue which allegedly resulted from the delay in construction on the Superior Project. Appellant also sought out-of-pocket costs for salaries which it paid to physicians who were under contract to begin work at the Superior building site in July 1985.

Having found that the trial court did not err in finding no breach of contract on the part of appellee, there can be no damages awarded to appellant for loss which resulted from the delay in the contract completion. As such, appellant's fifth assignment of error is overruled.

■ Appellant's final assignment of error argues that the trial court erred in awarding prejudgment interest to appellee. This contention is without merit.

In this case, the amount owed to appellee for completed work was based upon draw orders submitted to appellant for the Superior Project. Likewise, appellee submitted evidence of cost for the work done on the Collinwood, Miles Avenue, and East 82nd Street projects. The trial court found that pursuant to the contract agreement for the Superior Project and the course of conduct between the parties, appellee was entitled to $107,881.15 as of the end of August 1985.

■ Where the amount owing under a contract is clear, interest runs on the debt from the time it was due and payable, even though liability for the debt is disputed. *Tony Zumbo & Son Constr. Co. v. Dept. of Transp.* (1984), 22 Ohio App.3d 141, 147, 22 OBR 381, 387–388, 490 N.E.2d 621, 627–628; citing *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 22 O.O.3d 47, 426 N.E.2d 526. The trial court's determination that appellee was entitled to prejudgment interest is supported by the evidence in the record. There was no abuse of discretion in awarding such interest to appellee.

Thus, appellant's sixth assignment of error is without merit.

On cross-appeal, appellee/cross-appellant presents four assignments of error for review by this court.

"I. The trial court erred by excluding evidence of certain extra work performed by SCB.

"II. The trial court erred in excluding evidence of SCB's consequential damages.

"III. The trial court erred in excluding evidence of SCB's loss of bonding capacity.

"IV. The trial court erred by not awarding damages to SCB for the destruction of its business."

Appellee's/cross-appellant's four assignments of error all question the computation of damages by the trial court as well as the preclusion of certain evidence in support of its requested damage award. Upon review of the record, we find that the cross-assignments of error have no merit.

■ Appellee/cross-appellant submits that it was entitled to additional damages above those awarded by the trial court because they performed "extra" work on the Superior Project for which it was not compensated. The trial court, however, would not allow appellee/cross-appellant to introduce evidence on this matter.

Under the terms of the contract for the Superior Project, appellee/cross-appellant was responsible for making requests for such payments by use of a written "charge order." A "charge order" is used in these instances to document payments by way of a standard form. Appellee/cross-appellant did not abide by this requirement; thus, the trial court would not allow it to submit evidence of extra costs.

We accept the premise that written stipulations in contracts may be waived by the parties. *Frantz v. Van Gunten, supra,* 36 Ohio App.3d at 99, 521 N.E.2d at 509–510. However, the conduct of the parties throughout their dealings makes it clear that all payments for work were made following a written request. Thus, the trial court did not err by not allowing appellee/cross-appellant to introduce evidence of "extras."

■ Appellee/cross-appellant also argues that it should have been allowed to present evidence of consequential damages. It claimed that it lost subsequent business because of its dealings with appellant/cross-appellee.

When appellee/cross-appellant attempted to put on its case for damages, it had no documentation to prove it sustained such damage. Absent proof of loss, appellee/cross-appellant failed to sustain its burden of proof as to the nature and extent of its damages by a preponderance of the evidence. *Capital Equip. Enterprises, Inc. v. Wilson Concepts, Inc.* (1984), 19 Ohio App.3d 233, 19 OBR 384, 484 N.E.2d 237, paragraph two of the syllabus.

Therefore, the trial court did not err in limiting speculative testimony on damages, nor did it err in not awarding damages to appellee/cross-appellant

where sufficient proof of loss was not presented. Appellee's/cross-appellant's cross-assignments of error have no merit and are overruled.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J., and BROGAN, J., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting by assignment.

WILLIAM J. MARTIN, J., of the Court of Common Pleas of Carroll County, sitting by assignment.